Garland, J.
dissenting:
As I have not been able to convince myself of the correctness of the [330] conclusion the majority of the court have arrived at on one branch of this case, I shall state the reasons of my dissent.
The majority of the court think the intervenors, Lambeth & Thompson, are entitled to a privilege and preference over the attaching oreditor on the proceeds of the thirteen bales of cotton shipped by the defendants to the intervenors. On this point I differ with them.
The intervenors are the factors or commission merchants in New Orleans of the defendants, who are merchants in Vicksburg. The clerk and bookkeeper of the intervenors says, they have had a running account with defendants for two or three years, in which the balance has always been against them. The present balance is about $38,000, and since January, 1840, has not been less at any time than $6000. A great deal of the business of Lambeth & Thompson consists in making advances on cotton. They are sometimes made in cash, sometimes by acceptances and sometimes by advancing cotton bagging, rope and provisions. Has never known them to make advances except - when property was in hand or expected. Defendants are merchants in Vicksburg, and have been in the habit of purchasing large quantities of cotton from their country customers. The arrangement as to the business between the parties is, Lambeth & Thompson accept drafts at short sight or date, with the understanding they are to be met by cotton to be shipped to them. Lambeth & Thompson send the defendants bagging, rope, and provisions to be paid for by cotton. From two to three thousand bales of cotton were received from August, 1839, to August, 1840, under this arrangement. Bills at long dates are sometimes accepted. The cotton is generally sold as soon as it arrives, and defendants have no control over it. They could not take the cotton out of the hands of Lambeth & Thompson until they paid them. The bills of lading are in all cases sent to Lambeth & Thompson. The understanding is not in writing, and he derives his knowledge of it from the tenor of the defendants’ letters and conversations [381] with them. Knows of no specific or particular advance on the thirteen bales of cotton in question; they were received under the arrangement mentioned.
The intervenors in their answers to the supplemental interrogatories say, the debt of defendants to them accrued by making them advances, and they bound themselves to forward cotton and pay cash to meet said advances. The thirteen bales of cotton came into their hands under that agreement. They then proceed to say, they are factors, the defendants are merchants at Vicksburg, who purchase cotton which they consign to them. They make advances, &c. “ The arrangement between Aiken & Gwinn and Lambeth & Thompson was based on a well known custom to both parties. There was no written agreement.”
*568 It is not shown, that the intervenors made any specific advances on these thirteen hales of cotton, yet they claim a privilege on them and the judgment of the conrt allows it.
Previous to the adoption of the Louisiana Code, by the mercantile law, factors were entitled to a lien on produce or goods, or their proceeds in their hands, for a general balance of accounts. 8 Martin, 486 ; 9 Id. 297; 1 Martin, N. S. 261; 1 La. Rep. 868; 2 Id. 440.
The article 8152 of the Louisiana Code says, privileges can only he claimed for those debts to which it is expressly granted. The article 3214 says, “ every consignee or commission agent, who has made advances on goods consigned to him, or placed in his hands to he sold for account of the consignor, has a privilege for the amount of these advances, with interest and charges on the value of the goods, if they are at his disposal in his store, or in a public warehouse; or if, before their arrival, he can show, by a hill of lading or letter of advice, that they have been despatched to him.”
When the legislature adopted these articles of the Code, I not only infer, hut it is evident from the expressions used, some change in the law was intended. The intention to my mind is clear that the privilege was intended [332] to apply to specific advances alone, and so thought this conrt in the oases in 13 La. Rep. 490, and 14 Id. 8; and in the latter volume, in the case of Turpin v. Reynolds, 473, the principle of privilege was carried a step further ; hut the decision in this case goes beyond it, which in my judgment abolishes the article 3214 entirely ; and establishes the privilege for genera] balances, as the law existed before the adoption of the Code. To this as a question of law or expediency, I am entirely opposed.
As relates to persons out of the State, this is now a question of no consequence, as the legislature by an act passed at the last session gives a privilege to factors for balances due by non-residents; Acts 1841, pp. 21, 22; hut as it relates to our citizens, the question is an important one, as factors become a class of privileged creditors, although the law says no man shall be so, except by express legislation.
In regard to the proceeds of the thirteen hales of cotton, I think the plaintiff ought to recover, and think the judgment should he so amended.